**Celia DA SILVA, Plaintiff–Appellant,**

v.

**KINSHO INTERNATIONAL CORPORATION and Haruo Maruyama, Defendants–Appellees.**

**Docket No. 00–7055.**

United States Court of Appeals, Second Circuit.

Argued: Aug. 30, 2000

Decided: Oct. 5, 2000

David N. Mair, New York, N.Y. (Susan D. Bainnson, Kaiser Saurborn & Mair, P.C., New York, N.Y., on the brief), for plaintiff-appellant.

Jeffrey D. Buss, New York, N.Y. (Smith, Buss & Jacobs, L.L.P., New York, N.Y., on the brief), for defendants-appellees.

Before: NEWMAN, STRAUB and SACK, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

The issue on this appeal is whether the requirement for Title VII coverage that an employer have at least fifteen employees is an ingredient of subject matter jurisdiction or the merits of the plaintiff's claim. The issue has significance in this case because its resolution determines whether the District Court was entitled to exercise supplemental jurisdiction over the Plaintiff's pendent state law claims, on which the Defendant prevailed after a jury trial. Plaintiff–Appellant Celia Da Silva appeals from the January 10, 2000, judgment of the United States District Court for the Southern District of New York (Richard M. Berman, Judge), in favor of Defendant–Appellee Kinsho International Corp. ("Kinsho"). We conclude that the fifteen-employee requirement is not jurisdictional, and we therefore affirm.

## Background

The essential facts are not in dispute. Da Silva brought suit in the District Court alleging discrimination based on national origin, in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e–17 (1994), and New York state and New York City anti-discrimination laws. The defendants moved to dismiss the Title VII claim for lack of subject matter jurisdiction on the ground that Kinsho had fewer than fifteen employees, and was thus not an "employer" for purposes of Title VII. See 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...."). Da Silva responded that Kinsho and its Japanese parent company were a single employer for purposes of Title VII, see Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 (2d Cir.1995), and that the employees of the parent company should therefore be counted as Kinsho's.

Judge Martin, to whom the case was originally assigned, denied the motion to dismiss on the ground that the issue of single employer status required a factual inquiry. When the case came to trial, Judge Berman, to whom the case had been transferred, held a bench trial, by agreement of the parties, on the single-employer issue. Four witnesses testified, and several exhibits were introduced. Judge Berman reserved decision on the issue, and commenced a jury trial on the merits of Da Silva's Title VII claim the same day. However, that afternoon Judge Berman dismissed the Title VII claim, ruling that Kinsho was a separate entity from its parent for Title VII purposes, and, lacking fifteen employees of its own, was not a covered "employer." Exercising supplemental jurisdiction, see 28 U.S.C. § 1367 (1994), the Court continued with the trial of the state and city law claims.

While the jury was deliberating, the Court asked for additional briefing on the question that is the main issue in this appeal: is the requirement that an employer have fifteen employees a prerequisite to the exercise of subject matter jurisdiction, or is it instead merely a component

of the cause of action? Before the Court ruled on the issue, the jury returned a verdict for the defendants on the state and city claims.

Three weeks later, the Court decided that Kinsho's failure to qualify as an "employer" under Title VII was not jurisdictional, dismissed the Title VII complaint under Fed.R.Civ.P. 12(b)(6) (failure to state a claim) rather than 12(b)(1) (lack of jurisdiction), and ruled that it had been entitled to exercise, and had appropriately exercised, supplemental jurisdiction over the non-federal claims. Judgment was entered for the defendants on both the federal and pendent claims. Seeking an opportunity to pursue the state and city claims in state court, Da Silva appeals, challenging only the ruling that the fifteen-employee requirement is not jurisdictional.

### Discussion

■■■ The issue on this appeal is whether the District Court had subject matter jurisdiction over Da Silva's Title VII claim, which was dismissed because Kinsho had fewer than the fifteen employees necessary to meet the statutory definition of an "employer" under section 2000e(b) of Title VII. If the District Court did not have subject matter jurisdiction over the Title VII claim, it could not exercise supplemental jurisdiction over Da Silva's state law claims, *see Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996); *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir.1992), and the judgment entered for the Defendants on those claims would be void. Although Da Silva invoked the jurisdiction of the District Court and contended that Kinsho qualified as an "employer" under Title VII, she now accepts the ruling that Kinsho is not a statutory "employer" and, having lost on the merits of her state law claims, challenges the District Court's subject matter jurisdiction so that she may

relitigate these claims in state court. For its part, Kinsho, having disputed the District Court's jurisdiction, now asserts that the ruling on its "employer" status concerned the merits of Da Silva's claim and contends that the District Court had subject matter jurisdiction over the Title VII claim and could therefore exercise supplemental jurisdiction to adjudicate the state law claims. Thus, the parties, in Justice Jackson's memorable phrase, have "changed positions as nimbly as if dancing a quadrille." *Orloff v. Willoughby*, 345 U.S. 83, 87, 73 S.Ct. 534, 97 L.Ed. 842 (1953). However, their prior litigating positions do not preclude either side from asserting its current position since the issue of subject matter jurisdiction is one we are required to consider, even if the parties have ignored it or, as here, have switched sides on the issue.

Whether a disputed matter concerns jurisdiction or the merits (or occasionally both) is sometimes a close question. Court decisions often obscure the issue by stating that the court is dismissing "for lack of jurisdiction" when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim.[1] As a leading commentator has pointed out, "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as a predicate for relief—a merits-related determination." 2 Moore's Federal Practice § 12.30[1], at 12–36 (3d ed.2000).

■■■ The jurisdiction/merits issue can assume importance for at least three purposes. First is the obligation of a court, on its own motion, to inquire as to subject matter jurisdiction and satisfy itself that such jurisdiction exists. *See Mt. Healthy City School District Board of Education v.*

---

1. Justice Scalia has referred to such opinions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect."

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

*Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Second is a federal court's authority to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over claims not within federal jurisdiction, a power available only as to claims that properly invoke the court's subject matter jurisdiction. *See Cushing*, 970 F.2d at 1106. Finally, a judgment rendered by a court lacking subject matter jurisdiction is subject to collateral attack as void, *see* Restatement (Second) of Judgments § 69 (1980) (hereinafter "Restatement"), although a party that has unsuccessfully litigated a court's subject matter jurisdiction is normally collaterally estopped from such a subsequent challenge, *see Stoll v. Gottlieb*, 305 U.S. 165, 172, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Restatement § 12.

The Restatement has candidly recognized that in many situations "the matter in question can plausibly be characterized either as going to subject matter jurisdiction or as being one of merits or procedure." Restatement § 11 cmt. e.[2] Indeed, the Restatement's own attempt to identify the category of disputes that concern subject matter jurisdiction can sometimes suffer from this very defect. The Restatement defines subject matter jurisdiction as a court's "authority to adjudicate the type of controversy involved in the action," Restatement § 11, a formulation that has been cited approvingly, *see Carlisle v. United States*, 517 U.S. 416, 434–35, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (Ginsburg, J., with whom Souter and Breyer, JJ., join, concurring).[3] However, this formulation can merely shift the inquiry to the meaning and scope of the phrase "the type of controversy involved in the action." In the pending case, for example, we could consider the "type of controversy" involved in Da Silva's action to be all cases involving colorable claims of employment discrimination in violation of federal law, in which event the numerical employee requirement would concern the merits, or the "type of controversy" could just as plausibly be all cases of employment discrimination against employers covered by federal law, in which event the numerical

2. The Restatement includes a thoughtful discussion of some of the considerations bearing on whether an issue affects jurisdiction or the merits:

The line between the categories [jurisdiction and merits] is not established through refinement of terminology but through the cumulation of categorizing decisions into a pattern. The establishment of pattern is complicated by the fact that the distinction between subject matter jurisdiction and merits or procedure has significance in contexts other than that concerning the vulnerability of a judgment to delayed attack. In particular, a matter may be classified as "jurisdictional" so as to permit appellate control of a lower tribunal through the devices of mandamus or prohibition where review through appeal would be ineffectual. This kind of abuse of the concept of subject matter jurisdiction has practical utility. But it often results in uncritical transfer of classifications from one context, such as the availability of appellate review, to situations involving either tardily asserted grounds of appeal or attacks on judgments that have become final.

Whatever the context, the underlying question is how far to go in the direction of policing the boundaries of a court's subject matter jurisdiction, when the cost of intensive policing is to enlarge the vulnerability of the proceeding to interruption through extraordinary writ or the like and to belated attack after it has gone to judgment. In general, there appears to be a tendency to expand the scope of the term "jurisdiction" for purposes of sanctioning appellate control of lower tribunals. . . . On the other hand, the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.

Restatement § 11 cmt. e.

3. Justice Ginsburg's concurring opinion repeated the caution expressed in an earlier dissenting opinion she authored in the District of Columbia Circuit, questioning the " 'profligate use' of the word 'jurisdiction,' in diverse contexts, 'to mean many things—from the absence of a constitutional grant of judicial power to a statutory limit on time to appeal.' " *Carlisle*, 517 U.S. at 435, 116 S.Ct. 1460 (Ginsburg, J., concurring) (quoting *Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Commission*, 781 F.2d 935, 945 n. 4 (D.C.Cir.1986) (Ginsburg, J., dissenting)).

employee requirement would concern jurisdiction.

■ In considering whether a disputed issue should be regarded as an ingredient of subject matter jurisdiction or the merits, it might be helpful to identify different categories of issues. The clearest case for considering an issue to concern subject matter jurisdiction is one requiring determination as to whether the federal question or the diversity jurisdiction of a district court is properly invoked. *See* 28 U.S.C. §§ 1331, 1332. Thus, whether a plaintiff has pleaded a colorable claim "arising" under the Constitution or laws of the United States, *see Bell v. Hood*, 327 U.S. 678, 681–85, 66 S.Ct. 773, 90 L.Ed. 939 (1946), or a claim between parties of diverse state citizenship that exceeds the required jurisdictional amount, currently $75,000, *see* 28 U.S.C. § 1332(a), are undoubtedly issues of subject matter jurisdiction.

Less clearly placed on one side of the jurisdiction/merits line are disputes as to the existence of a fact that is essential to a constitutional exercise of Congress's power to regulate. For example, in *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), the Supreme Court considered whether a complaint alleged a sufficient nexus between an alleged antitrust conspiracy and interstate commerce. Reversing a dismissal, the Court noted that the Court of Appeals, which had affirmed the dismissal, had not been sure whether the dismissal had been ordered under Rule 12(b)(6) or Rule 12(b)(1), but had interpreted the dismissal to have been under Rule 12(b)(6). The Supreme Court said it too would treat the dismissal as made under Rule 12(b)(6), but noted that it would have made the same analysis had it been

under Rule 12(b)(1). *See id.* at 742 n. 1, 96 S.Ct. 1848.

Even less clear are disputes as to whether a claim, as to which Congress undoubtedly could have constitutionally extended a statute, is within the statute as enacted. For example, in *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), the Supreme Court reviewed a District Court's dismissal of a Title VII claim brought by a lawyer denied partnership in a law firm. The District Court had ruled that Title VII did not apply to selection of partners and dismissed for lack of subject matter jurisdiction. The Supreme Court ruled that the statute applied to partnership decisions, *id.* at 73–78, 104 S.Ct. 2229, and expressly declined to consider "the wisdom of the District Court's invocation of Rule 12(b)(1), as opposed to Rule 12(b)(6)," *id.* at 73 n. 2, 104 S.Ct. 2229. In *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), the Supreme Court affirmed a District Court's dismissal, for lack of subject matter jurisdiction, of a claim that Title VII applied to a suit by a United States employee working abroad for a United States employer. Although agreeing with the District Court's view of the limited reach of the statute, the Supreme Court's opinion did not comment on whether the dismissal had been properly based on lack of subject matter jurisdiction, rather than failure to state a claim.

Finally, there are cases, such as the pending one, where the dispute concerns the existence of a fact (here, fifteen or more employees) that Congress has specified as a prerequisite for the application of a federal statute. With respect to cases in this category, prior case law does not settle the issue in this Circuit,[4] but it offers

4. In violation of our local rules prohibiting citation of unpublished summary orders, *see* 2d Cir. R. § 0.23, the Appellant calls our attention to an unpublished summary order in *Guadagno v. Wallack Ader Levithan Associates*, 125 F.3d 844 (table), 1997 WL 609007 (2d Cir. Oct.2, 1997), in which we affirmed

the dismissal of Title VII and ADEA claims for lack of the required number of employees. The District Court had dismissed for lack of subject matter jurisdiction. Our affirmance of the judgment in favor of the defendants noted the absence of clear error in the District Court's factual finding that the requisite

some helpful guidance. In *Bleiler v. Crist-wood Construction, Inc.*, 72 F.3d 13 (2d Cir.1995), we considered a District Court's dismissal of an ERISA claim because neither of the defendants was an "employer" within the statutory definition contained in 29 U.S.C. § 1002(5) (1994). Although we agreed with the District Court that the defendants were not covered employers, *Bleiler*, 72 F.3d at 15–16, we rejected the District Court's dismissal for lack of subject matter jurisdiction and ruled that the ERISA claim should have been dismissed for failure to state a claim, *see id.* at 15 n. 1. As in the pending case, the consequence of our upholding the dismissal on the basis of Rule 12(b)(6) was that the dismissal of the federal claim left the District Court free to use its discretion to exercise supplemental jurisdiction over state law claims. *See id.* at 16.

In *Nowak*, we ruled that an ERISA claim, rejected because the challenged action occurred before 1975, should have been dismissed for failure to state a claim, rather than for lack of jurisdiction. *See* 81 F.3d at 1189–92. We first noted that "both federal jurisdiction and the merits of Nowak's federal claim turn on the same question"—whether the challenged action occurred before 1975. *Id.* at 1190. We then invoked the principle that "where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution," *id.* at 1189, in which event "we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits."[5] *Id.*

The rulings in other circuits are mixed. The Seventh Circuit has ruled that the fifteen-employee requirement of Title VII is not jurisdictional, *see Sharpe v. Jefferson Distributing Co.*, 148 F.3d 676, 677 (7th Cir.1998) ("A plaintiff's inability to demonstrate that the defendant has 15 employees is just like any other failure to meet a statutory requirement."),[6] and the District of Columbia Circuit, considering the same requirement of the Americans with Disabilities Act, *see* 42 U.S.C. § 12111(5)(A) (post–1994 claims), has also ruled that the requirement is not jurisdictional, *see EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 623–25 (D.C.Cir.1997).

Other circuits, however, have ruled, with little or no discussion, that the requisite number of employees is jurisdictional in Title VII cases, *see Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir.1999); *Greenlees v. Eidenmuller Enterprises, Inc.*, 32 F.3d 197, 198 (5th Cir.1994); *Childs v. Local 18, IBEW*, 719 F.2d 1379, 1382 (9th Cir.1983); *Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir.1983); *see also Hukill v. Auto Care, Inc.*, 192 F.3d 437, 441–42 (4th Cir.

number of employees had not been established, and said nothing about whether the dismissal had been properly made under Rule 12(b)(1), rather than Rule 12(b)(6). This is not surprising since the District Court's opinion gives no indication that any pendent state law claims had been presented, or that, for any other reason, the distinction between dismissal for lack of jurisdiction or on the merits had any significance in the case. The summary order approved nothing more than the District Court's unexceptional fact-finding, and presumably for that reason was unpublished.

**5.** Although a preference for a Rule 12(b)(6) dismissal is understandable where a disputed fact is both an ingredient of jurisdiction and the merits of a claim, the issue will often remain, as it does in the pending case, whether the disputed fact really is an ingredient of both jurisdiction and the merits.

**6.** The Seventh Circuit subsequently rejected *Sharpe*'s method of ascertaining whether the fifteen-employee threshold was met, *see Papa v. Katy Industries*, 166 F.3d 937, 939–43 (7th Cir.1999), but reaffirmed its ruling that the threshold is not jurisdictional, *see id.* at 943. Before *Sharpe*, the Seventh Circuit had ruled that the number of employees required for application of the Age Discrimination in Employment Act, 29 U.S.C. § 630(b), is jurisdictional. *See Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 579 (7th Cir.1993).

1999) (same as to Family and Medical Leave Act, 29 U.S.C. § 2611(4)(A)(i)).

In deciding whether the fifteen-employee requirement of Title VII should be deemed to concern jurisdiction or the merits, we believe that two considerations are relevant. The first concerns the consequences of a determination that some fact or circumstance is an ingredient of subject matter jurisdiction. One consequence, illustrated by the pending case, is that if there is lacking what is properly classified as subject matter jurisdiction, all actions of a federal court are void, and a trial on pendent state law claims, no matter how fully and fairly conducted, must be disregarded. Another consequence is that, despite the absence of a challenge by any party, the trial court and the reviewing court have an obligation to make their own independent determination that subject matter jurisdiction exists. These consequences suggest that the institutional requirements of a judicial system weigh in favor of narrowing the number of facts or circumstances that determine subject matter jurisdiction.[7]

The second pertinent consideration is the wording of the statute identifying the authority of a court to consider the case at hand. For example, in *Textron Lycoming Reciprocating Engine Division, AVCO Corp. v. UAW*, 523 U.S. 653, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998), the Supreme Court considered whether subject matter jurisdiction existed under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), for a suit alleging that a contract between a union and an employer was invalid. The Court said no, reasoning that the text of section 301(a) provided jurisdiction over suits "*for violation of contracts*" and that this jurisdictional grant did not include suits to declare contracts invalid.[8] *See id.* at 656–62, 118 S.Ct. 1626.

In the pending case, the jurisdictional statute states: "Each United States district court ... shall have jurisdiction of actions brought under this subchapter [Title VII]." 42 U.S.C. § 2000e–5(f)(3). This formulation is notably different from the authorization of diversity jurisdiction, 28 U.S.C. § 1332, which makes a threshold fact, the amount in controversy, an explicit ingredient of subject matter jurisdiction. In contrast to the specific threshold requirement of section 1332, section 2000e–5(f)(3) requires only that the action is "brought under" Title VII, a standard linguistically similar to, and arguably less exacting than, the "arising under" formulation of section 1331. Surely Da Silva has "brought" her action under Title VII, in the sense that she has endeavored to plead that an employer covered by Title VII has violated its prohibition. Even if "brought under" should be understood to exclude claims that present no colorable basis for claiming a Title VII violation, *cf. Bell v. Hood, supra* (frivolous or plainly insubstantial claim insufficient to invoke "arising under" jurisdiction), Da Silva's claim alleged a violation by an employer that could plausibly be regarded with its parent company as a single employer, thereby potentially meeting the fifteen-employee requirement. Her ultimate failure to prove single employer status is not a ground for dismissing for lack of subject matter jurisdiction or even for failure to state claim; it is a ground for defeating her federal claim on the merits.

Of course, a Title VII defendant wishing to defeat a plaintiff's claim on the ground that it lacks fifteen employees is normally entitled to seek dismissal if the

---

7. *See* Jon O. Newman, *Between Legal Realism and Neutral Principles: The Legitimacy of Institutional Values,* 72 Cal. L.Rev. 200 (1984).

8. The Supreme Court has observed that the fact that a statute says that a district court "shall have jurisdiction" for an identified purpose does not necessarily mean that the statute is conferring subject matter jurisdiction. The statute might, as in *Steel Co.,* merely be conferring power to grant a specified remedy, something that was not "genuine subject matter jurisdiction." 523 U.S. at 90, 118 S.Ct. 1003.

complaint shows on its face that the element of statutory coverage is lacking,[9] or to seek summary judgment on that issue if undisputed facts can be presented to defeat coverage. Whether such an employer remains exposed in federal court to liability for state law claims on the basis of supplemental jurisdiction after the federal claim is dismissed, will depend on the usual factors guiding a district court's discretion to exercise such jurisdiction. *See, e.g. Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) (relation of state claim to federal claim); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994) (conservation of judicial resources).

Taking what we believe is an appropriately limited view of the nature of issues that should determine subject matter jurisdiction and examining the wording of Title VII's jurisdictional statute, we agree with the Seventh and District of Columbia Circuits that the threshold number of employees for application of Title VII is not a jurisdictional issue, at least as long as a plaintiff, as in the pending case, makes a non-frivolous claim that the defendant is a covered employer. Since the District Court's subject matter jurisdiction was properly invoked and no issue is raised as to the Court's discretionary exercise of supplemental jurisdiction or the rejection of either the federal or the state claims on the merits, the judgment of the District Court is affirmed.

---

**9.** If, for example, a complaint alleged fewer than fifteen employees, the complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim, or under Rule 12(b)(1) if the pleading were deemed so demonstrably without substance as not even to invoke jurisdiction under Title VII.