# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| L-3 Communications Integrated | ) ASBCA Nos. 60713, 60716 |
| Systems, L.P. | ) |
| | ) |
| Under Contract No. FA8620-06-G-4002 *et al.* | ) |

APPEARANCES FOR THE APPELLANT:  Karen L. Manos, Esq.
                Erin N. Rankin, Esq.
                 Gibson, Dunn & Crutcher LLP
                 Washington, DC

APPEARANCES FOR THE GOVERNMENT:  E. Michael Chiaparas, Esq.
                 DCMA Chief Trial Attorney
               Cara A. Wulf, Esq.
                 Trial Attorney
                 Defense Contract Management Agency
                 Boston, MA

## OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON APPELLANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Appellant L-3 Communications Integrated Systems, L.P. (L-3) appeals from three contracting officers' final decisions[1] asserting government claims for recovery of purportedly unallowable airfare costs claimed by L-3 and paid by the government. During fiscal year 2009 (FY 09), L-3 incurred airfare expenses in performing flexibly-priced contracts[2] with the government. L-3 was reimbursed for its claimed costs. In April 2016, the Defense Contract Audit Agency (DCAA) issued an audit report concerning L-3's unsettled[3] flexibly-priced contracts for FY 09, including L-3's claimed airfares. In the audit report, DCAA applied a 79% "decrement factor" based upon prior audits of L-3's incurred costs, to claimed international airfare costs over

---

[1] ASBCA No. 60714, also involving a government claim for recovery of premium airfare, is not subject to this motion. A fourth contracting officer's final decision, docketed as ASBCA No. 60715, was settled before L-3 filed its complaint.

[2] Flexibly-priced contracts include fixed-price contracts with price adjustments for actual costs of labor or materials, cost-reimbursement contracts, incentive contracts, orders under indefinite-delivery contracts where final payment is based on actual costs incurred, and the materials portion of time-and-materials contracts. *See* FAR 30.001.

[3] Here, the flexibly-priced contracts are unsettled because L-3 and the government have not agreed on final indirect cost rates. *See generally* FAR 42.7.

$6,000. The Defense Contract Management Agency (DCMA) contracting officers subsequently issued final decisions asserting government claims for the costs questioned in the DCAA audit report.

Pending before the Board is L-3's motion to dismiss ASBCA Nos. 60713 and 60716 for lack of jurisdiction[4] because the final decisions purportedly fail to provide adequate notice of the bases and amounts of the government's claims. The DCMA opposes the motion, asserting that the contracting officers' final decisions provide sufficient information to survive L-3's motion to dismiss. For the reasons set forth below, we deny L-3's motion to dismiss.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

L-3 is a wholly-owned subsidiary of L-3 Communications Corporation. L-3 is party to numerous contracts with the government, administered by DCMA, including Contract No. FA8620-06-G-4002. (Compl. ¶¶ 1, 4, answer ¶¶ 1, 4) The contracts at issue, included a cost-reimbursement line item for travel (compl. ¶ 13, answer ¶ 13). Although the contracts and task orders differed somewhat in their specific terms, they all placed restrictions on reimbursement of first class and business class airfare (app. mot. at 5-8; R4, tabs 1-4).

On 13 April 2016, DCAA issued Audit Report No. 9891-2009G10100002, Independent Audit Report on L-3 Communications Integrated Systems' Proposed Amounts on Unsettled Flexibly-Priced Contracts for Fiscal Year 2009 (R4, tab 5). The audit report applied a 79% decrement factor to L-3's claimed international airfares over $6,000 (app. mot. at 2; R4, tab 5 at 24-25). The decrement factor was based on the questioned travel costs in DCAA's audits of L-3's FYs 2007 and 2008 incurred costs (*id.*).

In a final decision dated 29 June 2016, administrative contracting officer (ACO) Gladys Broyles asserted a government claim in the amount of $755,091 for repayment of purportedly unallowable premium airfare and travel on non-U.S. flag carriers that the government had paid to L-3 (R4, tab 6 at 1). The final decision referenced the DCAA audit report and based the government claim upon the ACO's finding that L-3 had not complied with Federal Acquisition Regulation (FAR) 31.205-46(b) along with ten additional FAR provisions in FAR parts 31.201, 31.205, 47.4, 47.403, 47.405, and 52.247 (*id.* at 2). The final decision asserts a government claim in an amount equal to the costs questioned in the DCAA audit report.

---

[4] As will be explained below, although the appeal challenges DCMA's decisions, here, where the decisions challenged are government claims, success in the motion to dismiss will set DCMA's final decisions aside.

2

The ACO found that the delivery orders associated with the contract required that first and business class airfares be documented and justified and that "all such costs shall be reimbursable hereunder at an amount approved by the ACO" (R4, tab 6 at 3). The final decision found that L-3 did not submit any requests for approval under the delivery orders and that the ACO did not approve any requests for the use of premium airfare, and she thus denied $381,430 as a violation of the terms of the contract (*id.*). In addition, the ACO asserted that she was "unable to determine from the lack of documentation how much of the questioned costs are a result of Contractor failing to use U.S.-flag air carriers and complying with FAR 47.2 and if the contractor acted reasonably" (*id.* at 5).

In a final decision dated 1 July 2016, ACO Cheryl Clark asserted a second government claim in the amount of $16,354 for repayment of purportedly unallowable premium airfare that the government had paid to L-3 on delivery orders other than those at issue in ACO Broyles' final decision (R4, tab 8 at 1). ACO Clark's final decision also referenced the 13 April 2016 DCAA audit report. She based the government claim on her finding that L-3 had not complied with FAR 31.205-46(b) and FAR 31.205-46(a)(7), and also cited FAR 31.201-2(d) for L-3's purported failure to maintain adequate records, and FAR 31.201-3 price reasonableness (*id.* at 2). The ACO found that "L-3 has not provided documentation to justify the need for premium airfare which calls into question the denied amount" (*id.*).

L-3 timely appealed to the Board from the two final decisions.

### DECISION

I.     L-3's Motion To Dismiss for the ACO's Alleged Failure to Adequately Explain the Government's Claim is a Motion to Dismiss for Lack of Jurisdiction

The parties disagree as to the proper standard of review for L-3's motion. L-3 asserts in its opening brief that this is a motion to dismiss for lack of jurisdiction, and therefore the Board "may consider matters outside the pleadings and decide disputed issues of fact" (app. mot. at 1). The Federal Rules of Civil Procedure (FED. R. CIV. P.) distinguish between motions to dismiss for lack of jurisdiction (Rule 12(b)(1)) and motions to dismiss for failure to state a claim (Rule 12(b)(6)); however, Board Rule 7 does not make this distinction. Where the Board's rules are silent, we look to the FED. R. CIV. P. for guidance. *See, e.g., Dennis Anderson Constr. Corp.*, ASBCA Nos. 48780, 49261, 96-1 BCA ¶ 28,076 at 140,188. In supplemental briefing, L-3 confirmed its position that its motion to dismiss for lack of subject matter jurisdiction should be reviewed consistent with FED. R. CIV. P. 12(b)(1) (app. supp. br. at 1). In opposition, the government confirmed its position that the motion should be reviewed

3

as a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6) (gov't supp. br. at 4).

The distinction between a dismissal for lack of subject matter jurisdiction and a dismissal for failure to prove the necessary elements of a claim for which relief could be granted is a long-standing source of confusion because the term "jurisdiction" has more than one meaning. *See Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 686 (Fed. Cir. 1992) ("'Jurisdiction' is a term that is one of the most slippery in the legal lexicon. It takes on different connotations depending upon the context."). As the Supreme Court recognized in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006), judicial opinions "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Id.* (quoting *Da Silva v. Kinsho International Corp.*, 229 F.3d 358, 361 (2nd Cir. 2000)).

This distinction between establishing jurisdiction and establishing the facts necessary to recover on a claim is also relevant to determining the evidence that the Board may consider in deciding the motion. When a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) denies or controverts allegations of jurisdiction, only uncontroverted factual allegations are accepted as true for purposes of the motion, and other facts underlying the jurisdictional allegations are subject to fact-finding. *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993); *Arbaugh*, 546 U.S. at 514. The facts supporting jurisdiction are subject to fact-finding by the Board based on our review of the record. *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816; *Raytheon Missile Sys.*, ASBCA 58011, 13 BCA ¶ 35,241 at 173,016. However, when the factual dispute involves the allegation of a fact that is not jurisdictional, but an essential element of a claim for relief, this is a matter that goes to the merits, and is not determined by the Board at the preliminary stage. *Arbaugh*, 546 U.S. at 514. Moreover, when the jurisdictional facts are intertwined with the merits of the appeal, the Board should leave the jurisdictional determination until the hearing. *See* 2 MOORE'S FEDERAL PRACTICE 3D § 12.30[3].

Pursuant to the Contract Disputes Act (CDA) 41 U.S.C. §§ 7101-7109, a contractor may, "within 90 days from the date of receipt of a contracting officer's decision" under 41 U.S.C. § 7103 "appeal the decision to an agency board as provided in" section 7105. 41 U.S.C. § 7104(a). Our reviewing court, the Federal Circuit, has held that CDA jurisdiction requires both a valid claim and a contracting officer's final decision on that claim. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)). Additionally, the Federal Circuit has held that an additional jurisdictional requirement is that a claim be submitted in writing and contain a "clear and unequivocal statement that gives...adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States* 811 F.2d 586,

4

592 (Fed. Cir. 1987); *Maropakis*, 609 F.3d at 1327.[5] The Board treats a determination regarding the adequacy of a claim to be jurisdictional. *See, e.g., CCIE & Co.,*14-1 BCA ¶ 35,700 at 174,816. "The statement of claim must provide a basis for meaningful dialogue between the parties aimed toward settlement or negotiated resolution of the claim if possible, or for adequate identification of the issues to facilitate litigation should that be necessary." *Blake Constr., Co.*, ASBCA No. 34480 *et al.*, 88-2 BCA ¶ 20,552 at 103,890; *see also Holk Development, Inc.*, ASBCA Nos. 40579, 40609, 90-3 BCA ¶ 23,086 at 115,939.

Where, as here, the CDA claim is a government claim, the contracting officer's final decision is considered to be the claim. *See, e.g., Lockheed Martin Corp.*, ASBCA No. 57525, 12-1 BCA ¶ 35,017. The government bears the burden of establishing jurisdiction for a government claim. *See, e.g., Cedars-Sinai*, 11 F.3d at 1584. Pursuant to the CDA, for a government claim, this Board's jurisdiction is dependent on a contracting officer asserting a claim in the form of a contracting officer's final decision issued to the contractor. *Raytheon Company*, ASBCA No. 57576 *et al.*, 15-1 BCA ¶ 36,043 at 176,049.

## II.   The Final Decisions at Issue State CDA Claims

The parties do not dispute that the DCMA issued written contracting officers' final decisions demanding sums certain that were timely appealed to the Board. In addition, we find that both final decisions provide adequate notice of the basis and amount of the claims. The final decision by ACO Broyles at issue in ASBCA No. 60713 asserts a sum certain of $755,091 and provides an adequate notice of the basis for the claim by stating that it is for recoupment of premium airfare and travel on non-U.S. flag air carriers (R4, tab 6 at 1). Similarly, the final decision by ACO Clark in ASBCA No. 60716 asserts a sum certain of $16,354 for recoupment of premium airfare (R4, tab 8 at 1). Additionally, both final decisions reference the DCAA audit report. These final decisions provide an adequate notice to L-3 of the basis for each government claim and state claims upon which relief may be granted.

According to L-3, the government was required to "identify the specific items costs that the Government actually determined to be unallowable" and "state the basis for the unallowability of specific costs" (app. mot. at 12). L-3 does not provide a

---

[5] *But see, e.g., Relfectone Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc); *Ellett Constr.*, 93 F.3d at 1542; *England v. The Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) for cases that do not include the requirement for a clear statement of the claim as a jurisdictional requirement. As explained below, we find that the government has provided a clear statement of the claim, so L-3's motion must be denied whether it is evaluated pursuant to Rule 12(b)(1) or 12(b)(6).

citation to authority requiring this level of specificity to establish a valid CDA claim.[6] At best, L-3 cites to the decision of the Court of Federal Claims in *Volmar Construction, Inc. v. United States*, 32 Fed. Cl. 746 (1995), for the proposition that the government must set forth in any claim "the specific basis of liability and the amount corresponding to each basis." *Id.* at 752. However, to the extent L-3 relies on *Volmar* for its motion, such reliance would be entirely misplaced. In *Volmar* (an opinion that is not binding upon us) the government withheld a portion of the contract balance pursuant to five different setoffs. Although *Volmar* is not entirely clear regarding procedural posture, after Volmar filed suit before the court, the government asserted the setoffs as "claims" in opposing Volmar's motion for summary judgment. Volmar argued that the court lacked jurisdiction to entertain the government's setoffs because they had not been the subject of contracting officer final decisions before the case was filed. *Id.* at 749-51. The court held that the government asserted valid claims to the extent that each unique setoff included the amount of liability corresponding to that particular setoff. *Id.* at 752.

The Board has dismissed appeals for failure to provide adequate notice of the basis for a claim, but in these instances, the claim provided almost no information. For example, in *I.B.A. Company*, ASBCA No. 37182, 89-1 BCA ¶ 21,576, the Board dismissed an appeal where the contractor asserted a claim of "$25,000 per contract" for 187 contracts for "excess costs." The Board granted the government's motion to dismiss holding that "without an itemization of the damage claims and some minimal explanation of the alleged cause and effect of the damages, the claim bordered on the 'frivolous.'" *Id.* at 108,656 (citing *Reese Industries*, ASBCA No. 29594-91, 84-3 BCA ¶ 17,628). The minimal amount of information sufficient to provide adequate notice is quite low. In *Marshall Construction, Ltd.*, ASBCA Nos. 37014, 39361, 90-1 BCA ¶ 22,597, the Board found a valid claim for overrun costs based upon a "bare bones" letter to the contracting officer basically requesting a contracting officer's final decision and stating a sum certain. Although the letter itself did not provide sufficient supporting data, the Board found that the supporting information was available to the government in a prior letter and the complaint in the Board appeal. *Id.* at 113,390.

In this appeal, each final decision sets forth a sum certain, and a basis for the claim. In ASBCA No. 60713 the final decision actually sets forth two bases for the claim: improper use of premium airfare; and improper use of foreign flag carriers (R4, tab 6 at 1). We do not read *Volmar* as requiring the government to state a value for each basis within a final decision. However, even to the extent *Volmar* could be read to impose such a requirement, we note that the contracting officer found that she was "unable to determine from the lack of documentation how much of the questioned costs are a result of Contractor failing to use U.S.-flag air carriers and complying with

---

[6] We note that a rule, such as that proposed by L-3, requiring that claims specify the amount claimed for each cost element would result in the dismissal of many meritorious contractor claims.

6

FAR 47.2 and if the contractor acted reasonably" (R4, tab 6 at 5). Thus, to the extent *Volmar* is relevant, we find that the final decision in ASBCA No. 60713 alleges jurisdictional facts sufficient to satisfy the requirement of stating a value for each basis within the final decision.

Moreover, L-3's complaint and motion both demonstrate that it is aware that the dollar amount of the claim was arrived at by multiplying the decrement factor (computed in L-3's 2007 and 2008 incurred cost audits) by the claimed international airfares of $6,000 or more. Thus, we find that L-3 has sufficient information to "provide a basis for meaningful dialogue between the parties aimed toward settlement or negotiated resolution of the claim if possible, or for adequate identification of the issues to facilitate litigation should that be necessary." *Blake Constr.*, 88-2 BCA ¶ 20,552 at 103,890. Obviously, L-3 and the government disagree on the merits of the claim, but the parties clearly understand how the government calculated the amounts of its claims. These facts are sufficient to establish jurisdiction to entertain the appeal. A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) must be denied.

Based on the analysis above, we do not address the government's argument regarding notice pleading. Further, we agree with L-3 that the sufficiency of a contractor claim is determined by the adequacy or sufficiency of the information submitted to the contracting officer. (App. reply br. at 7) (citing *Montage, Inc.*, ASBCA No. 56796, 09-2 BCA ¶ 34,293). For a government claim, L-3 asserts, without citation to authority, that the adequacy or sufficiency of the claim should be determined solely by the contracting officer's final decision asserting the claim (app. reply br. at 7). As we find that the final decisions themselves provide sufficient information to assert a government claim, we do not reach this issue.

L-3 cites to non-record documents that it contends demonstrate that the final decisions do not provide sufficient notice and provide a basis for the Board to dismiss for lack of jurisdiction. We disagree. While the Board properly may consider evidence beyond the face of the pleadings to make factual findings regarding jurisdiction, as noted above, such findings are limited to facts necessary to resolve a jurisdictional question, and the Board should leave facts that are intertwined with the merits of the appeal for resolution at a hearing. *See, e.g., Arbaugh*, 546 U.S. at 514; 2 MOORE'S FEDERAL PRACTICE 3D § 12.30[3]. Here we find that L-3's collateral attack on final decisions through reference to purported errors in the 2007 and 2008 DCAA audit reports as well as the 2009 audit report of the incurred costs at issue in these appeals raise issues that go to the merits and are not appropriate for consideration on a motion to dismiss (app. mot. at 2-9, exs. 1, 2). To the extent L-3's argument can be read as contesting a jurisdictional fact, the jurisdictional fact is intertwined with the determination of the merits and is not subject to resolution in a motion to dismiss. Similarly, L-3's argument attempting to discredit ACO Broyles' statement in her final decision that she reviewed the underlying transactions (app. reply br. at 8-12) goes to the merits of the appeal. As ACO Broyles' statement is not a jurisdictional fact, we

7

assume it to be true for the purpose of this motion to dismiss. Moreover, L-3's citation to a Department of Defense Inspector General report critical of DCAA's use of a decrement factor and DCAA's purported failure to comply with Generally Accepted Government Auditing Standards (app. reply br. at 13) again does not relate to jurisdictional facts and we do not consider this argument in deciding a motion to dismiss. Following development of the record, the Board may ultimately review these issues on the merits, but it would not be proper for the Board to consider such arguments in reviewing a motion to dismiss.

## CONCLUSION

For the reasons stated above, L-3's motion to dismiss is denied.

Dated: 27 September 2017

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60713, 60716, Appeals of L-3 Communications Integrated Systems, L. P., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8